IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN JESS, | ) CIV. NO. 04-00601 JMS/BMK |
| | ) |
| Petitioner, | ) |
| | ) ORDER GRANTING |
| vs. | ) PETITIONER'S 28 U.S.C. § 2254 |
| | ) PETITION FOR WRIT OF HABEAS |
| | ) CORPUS TO VACATE EXTENDED |
| JOHN F. PEYTON[1]; Director, | ) SENTENCE |
| Department of Public Safety, | ) |
| State of Hawaii; LANE BLAIR; | ) |
| Warden, Diamondback Correctional | ) |
| Facility, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

ORDER GRANTING PETITIONER'S 28 U.S.C. § 2254 PETITION FOR
WRIT OF HABEAS CORPUS TO VACATE EXTENDED SENTENCE

I.  INTRODUCTION

Petitioner Brian Jess ("Jess") objects to extended sentences imposed

on him by a state judge pursuant to Hawaii Revised Statutes ("HRS") §§ 706-661

(Supp. 1999) and 706-662(1) and (4)(a) (Supp. 2000).  Specifically, this § 2254

petition presents the question of whether the Hawaii extended sentencing scheme

_____

[1] John F. Peyton is no longer the Director of the Department of Public Safety.  The
Interim Director is Frank J. Lopez.

violates the United States Constitution's Sixth Amendment trial-by-jury clause

pursuant to the rationale of the United States Supreme Court decision in *Apprendi*

*v. New Jersey*, 530 U.S. 466 (2000) and its progeny.  For the reasons stated herein,

the court concludes that the state court's decision was  "contrary to," and involved

an unreasonable application of *Apprendi* under § 2254.  The court further finds

that the error was not harmless, and therefore GRANTS Jess's writ of habeas

corpus.

## II.  BACKGROUND

On March 2, 2000, Jess was charged by complaint in the First Circuit

Court of the State of Hawaii for the offenses of Robbery in the First Degree in

violation of HRS § 708-840(1)(b)(ii) (Count I), and Unauthorized Control of a

Propelled Vehicle ("UCPV") in violation of HRS § 708-836 (Count II).  The

charges alleged that on February 23, 2000, Jess threatened a taxi driver with a

knife, took the driver's money and then drove away in the taxi.

Following a state jury trial, Jess was found guilty of both counts on

December 4, 2000.  Under Hawaii state law, Robbery in the First Degree (Count I)

is a class A felony punishable by "an indeterminate term of imprisonment of

twenty years." See HRS § 708-840(3); HRS § 706-659.  UCPV (Count II) is a

class C felony punishable by an indeterminate maximum term of imprisonment of

five years. <u>See</u> HRS § 708-836, HRS § 706-660.  Thus, without applying an

extended sentencing scheme, Jess's statutory sentence would have been capped at

twenty-five years.

On January 10, 2001, the prosecution filed a motion for extended

term of imprisonment pursuant to HRS §§ 706-661 and 706-662(1) and (4)(a).

HRS § 706-622 states in pertinent part:

> A convicted defendant may be subject to an extended term of
> imprisonment under section 706-661, if the convicted defendant
> satisfies one or more of the following criteria:
>
> (1)   The defendant is a persistent offender whose imprisonment for
>       an extended term is necessary for protection of the public.  The
>       court shall not make this finding unless the defendant has
>       previously been convicted of two felonies committed at
>       different times when the defendant was eighteen years of age or
>       older.
>                                    . . .
> (4)   The defendant is a multiple offender whose criminal actions
>       were so extensive that a sentence of imprisonment for an
>       extended term is necessary for protection of the public.  The
>       court shall not make this finding unless:
>
>       (a)   The defendant is being sentenced for two or more
>             felonies or is already under sentence of imprisonment for
>             felony;

HRS § 706-662.

The sentencing court granted the prosecution's motion after a May 7,

2001 hearing.  Jess stipulated that he had three relevant predicate felony

convictions[2] and the court found that Jess met the statutory criteria as both a "persistent offender" and a "multiple offender"[3] under HRS § 706-622(4)(a).  The court also found that Jess's extended term was necessary for the protection of the public, citing Jess's "lengthy criminal history" and the escalation of his criminality to violence and the use of a weapon.  The court sentenced Jess to an extended indeterminate life term of imprisonment with the possibility of parole for the robbery offense to run concurrently with an extended indeterminate ten year term of imprisonment for the UCPV offense.

In the "Findings of Fact, Conclusions of Law, and Order Granting the State's Motion for Extended Term of Imprisonment" filed on June 5, 2001, the sentencing court made the following findings on which it based its determination that Jess's extended sentence was necessary for the protection of the public:

a.   Defendant was on probation in Cr. No 99-0237 when he committed the instant offenses.

b.   Defendant has an extensive criminal history, which now includes five felony convictions and over twenty petty misdemeanor and misdemeanor convictions.

c.   Defendant's criminality has continued despite his prior contacts with the criminal justice system.

---

[2] Jess was convicted in Hawaii state court of the felony offenses of Fraudulent Use of Credit Card on June 19, 1984; Theft in the First Degree on May 29, 1986; and Theft in the Second Degree on June 1, 1999.

[3] The state court found that Jess was a "multiple offender" under HRS § 706-622(4)(a) because Jess was being sentenced in the present matter for two felony offenses.

d.   Defendant has failed to benefit from the opportunities provided by the criminal justice system, including parole, probation and drug court.

e.   Defendant has demonstrated a disregard for the rights of others and a questionable attitude toward the law.

f.   Defendant's behavior has escalated as evidenced by his possession and threat to use a knife during the commission of the instant robbery.

g.   Defendant has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior with the requirements of the law.

h.   Due to the quantity and seriousness of the Defendant's past convictions and the seriousness of the instant offenses, Defendant poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.

Jess filed a timely notice of appeal and argued that the application of Hawaii's extended term statutes violated his right to due process and Apprendi "[b]ecause it allow imposition of a sentence greater than the statutory maximum based on findings of fact, other than prior convictions, that are not submitted to a jury." On September 26, 2003, the Hawaii Supreme Court issued a summary disposition order rejecting Jess's Apprendi claim, and entered its "Notice of Judgment on Appeal" affirming the circuit court's judgment of conviction and sentence on October 17, 2003.

On October 6, 2004, Jess filed the instant writ of habeas corpus

pursuant to 28 U.S.C. § 2254.[4]  The sole ground for Jess's petition, which he raised on direct appeal before the Hawaii Supreme Court, is that the state court's imposition of his extended-term sentences is unconstitutional because it violates the United States Constitution's Sixth Amendment's trial-by-jury clause, pursuant to the rationale of *Apprendi* and its progeny.

## III.  ANALYSIS

### A.  Habeas Standard of Review

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to a state court conviction is not entitled to federal habeas corpus relief unless he or she can show that the state court's adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Jess seeks federal habeas relief under 28 U.S.C. § 2254(d)(1) from the

---

[4] Jess's habeas petition was procedurally proper in that he had exhausted his state remedies and filed within § 2254's one-year statute of limitations.

extended sentences imposed on him by the state court.  He argues that the

imposition of an extended sentence pursuant to HRS § 706-662 violates the

requirements of *Apprendi* and is unconstitutional.  Under *Apprendi*, "[o]ther than

the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Jess contends that the

determination by the sentencing judge that his extended term of imprisonment was

necessary for the protection of the public is based upon factual findings which

increases his penalty beyond the statutory maximum and therefore must be

"submitted to the jury, and proved beyond a reasonable doubt." *Id.*

In opposition, the prosecution argues that Jess was exposed to an

extended term of imprisonment under HRS § 706-662 based on his prior felony

convictions.  Since the fact of prior convictions is an express exception to the

*Apprendi* rule,[5] any further determinations by the sentencing judge that Jess's

extended term of imprisonment was necessary for the protection of the public was

---

[5] The Supreme Court held in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), that the fact of prior convictions was a "sentencing factor" that did not need to be alleged in the indictment and proven to a jury beyond a reasonable doubt when a court authorizes an enhanced sentence.  The Court reasoned that the prior commission of a felony was a sentencing factor that was neither presumed nor needed to "be 'proved' to be present, in order to prove the commission of the relevant crime." *Id.* At 241.  *Apprendi* did not contest the validity of *Almendarez-Torres* and treated *Almendarez-Torres* as a "narrow exception to a general rule." *Apprendi*, 530 U.S. at 490.

a discretionary sentencing judgment and not an adjudicatory fact within the

meaning of *Apprendi*.  The State contends that the Hawaii Supreme Court's

decision does not provide Jess with a basis for habeas relief under § 2254.

**B.     The Hawaii Supreme Court's Analysis of the State's Extended Sentencing Scheme**

The Hawaii Supreme Court affirmed Jess's extended sentence and

held that HRS §§ 706-622(1) and (4) are not unconstitutional pursuant to its

decision in *State v. Kaua*, 102 Haw. 1, 72 P.3d 473 (2003) (*Kaua* I").  *Kaua I*, the

controlling state authority at the time of Jess's judgment, upheld the

constitutionality of the Hawaii sentencing scheme in light of *Apprendi*.  When a

sentencing court imposes an extended term of imprisonment, it applies a "two-step

process." *Id.* at 481.  First, the court must make a finding of historical facts "that

place the defendant within the class of offenders subject to extended term

sentencing." *Id.* at 484 (citations omitted).  Second, the court must then determine

whether "the defendant's commitment for an extended term is necessary for the

protection of the public." *Id*. at 481.

*Kaua* I articulated the "extrinsic-intrinsic" analysis to determine what

factual findings must be made by a jury in order to subject defendants to extended

term sentencing under the first step.  The court distinguished between "historical

facts," such as prior convictions, that are *extrinsic* to the circumstances of the

defendant's instant offense and "aggravating circumstances" that are inextricably

enmeshed in and *intrinsic* to the defendant's commission of the charged offense.

*Id.* at 482.  The court held that while intrinsic factual findings must be "submitted

to the jury and proven beyond a reasonable doubt," factual findings extrinsic to the

elements of the charged offense and involve consideration of collateral events or

information should be found by the sentencing judge. *Id.* at 484-85.  *Kaua* I thus

interpreted Hawaii's extended term sentencing scheme to be in harmony with

*Apprendi*.

**C.  The Ninth Circuit's Rejection of the State's Extended Sentencing Scheme**

Kaua, like Jess, challenged the Hawaii Supreme Court's *Apprendi*

analysis in a § 2254 petition.   In *Kaua v. Frank*, 350 F.Supp.2d 848 (D. Haw.

2004) (*Kaua* II), United States District Court Judge Susan Oki Mollway ruled that

the state's extended sentencing statutory scheme violated *Apprendi* and granted

Kaua's habeas petition.  The Ninth Circuit recently affirmed Judge Mollway's

decision in

*Kaua v. Frank*, 436 F.3d 1057 (9th Cir. 2006) (*Kaua* III).

*Kaua* III rejected the Hawaii Supreme Court's distinction between

"extrinsic" and "intrinsic" evidence:

> With respect to the Hawaii Supreme Court's decision, we disagree with its reasoning that the "extrinsic" nature of the factual findings required for step two exempt them from *Apprendi's* reach. *Apprendi* made irrelevant any distinction between facts based on their "intrinsic" or "elemental" quality for purposes of ascertaining whether the Sixth Amendment requires a jury to find them. *Apprendi* announced a new rule that focused on the *effect* of a court's finding of fact, not on the label the statute or the court applied to that fact. The United States Supreme Court plainly set forth this new rule, stating that "the relevant inquiry is one not of form, but of effect- does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" If so, the Sixth Amendment requires a jury, not a judge, to make the finding. *Apprendi* exempted only one finding-the fact of a prior conviction- from this "general rule."

*Kaua* III at 1061-62, (footnotes omitted). The court thus concluded that the Hawaii Supreme Court's ruling upholding an extended sentence was clearly contrary to *Apprendi* and thus unconstitutional.

Kaua III is controlling precedent. The Hawaii Supreme Court, in fact, relied on *Kaua* I in finding that Jess's extended sentence did not violate *Apprendi*. This court is bound by *Kaua* III, and thus finds that the State's extended sentencing scheme violates the Sixth Amendment.

## D. The Error was not Harmless

The prosecution and Jess disagree on the impact of the error. Jess argues that *Apprendi* error is structural and thus not subject to any error analysis.

The prosecution, on the other hand, argues that this court should use a plain error analysis as Jess did not raise the error at the time of sentencing. The court disagrees with both, finding that the *Apprendi* error is subject to the standard harmless error analysis that applies to constitutional violations on habeas review.

Courts have consistently held that *Apprendi* errors are not structural. *See United States v. Padilla*, 415 F.3d 211 (1st Cir. 2005); *Coleman v. United States*, 329 F.3d 77 (2d Cir. 2003)*; Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003) (en banc), *rev'd on other grounds Schriro v. Summerlin*, 542 U.S. 348 (2004); *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002); *United States v. Anderson*, 236 F.3d 427, 429 (8th Cir. 2001); *United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001) (en banc). This court agrees that the error was not structural.

The court likewise rejects the prosecution's argument that because Jess did not raise his *Apprendi* claim at his sentencing, any error is now subject to a plain error analysis. Jess raised the *Apprendi* claim before the Hawaii Supreme Court, the Hawaii Supreme Court addressed his *Apprendi* claim, and the Hawaii Supreme Court decision is now being reviewed by this court.

Courts have consistently applied a harmless error test to constitutional violations in habeas proceedings. *See Calderon v. Coleman*, 525

U.S. 141, 145-47 (1998); *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1041 (9th Cir. 2005); *Jackson v. Giurbino*, 364 F.3d 1002, 1010 (9th Cir. 2004). This test requires the court to determine if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The *Brecht* analysis does not apply neatly to the review of *Apprendi* error. *Brecht* addressed constitutional error that occurs at trial. The question posed under the *Brecht* analysis is generally whether a statement or other piece of evidence erroneously admitted or excluded at trial had a substantial or injurious effect on the jury's verdict. Thus, a trial error is examined in the context of trial and weighed against other evidence adduced at trial; its effect on the verdict can be thereby inferred.

In the instant case, the relevant question is whether the Sixth Amendment violation had a substantial and injurious effect or influence in determining the sentence, not the verdict. The constitutional error was the choice of the decision maker in what is ultimately a subjective inquiry: whether or not an extended sentence is necessary for the protection of the public. Such an error cannot be weighed against other evidence to determine its relative impact. Rather,

a literal application of *Brecht* would require the court to determine whether the selection of one fact finder rather than another influenced the ultimate conclusion regarding public protection and whether that influence was substantial or injurious. Given the subjective nature of the public protection determination, a strict application of *Brecht* would require more speculation than analysis.

In *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995), the Supreme Court offered further guidance regarding the harmless error analysis. The Court stated that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had a substantial and injurious effect or influence on the jury's verdict, that error is not harmless. And, the petitioner must win." *Id.* at 436 (internal quotation signals omitted). The court is in "grave doubt" when "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435.

The "grave doubt" formulation of the *Brecht* analysis allows the court to engage in a more workable review of *Apprendi* error. The question thus becomes whether the court has grave doubt that the jury would have reached the same conclusion regarding the need for public protection as the judge did. *See Matias v. Peyton*, Civ. No. 04-00663 SOM/KSC, Order Adopting and Supplementing Findings and Recommendation That Petitioner's 28 U.S.C. § 2254

13

Petition be Granted; Order Granting Petitioner's 28 U.S.C. § 2254 Petition (ruling that *Apprendi* error was not harmless when court had grave doubt regarding whether the jury would have made a different public protection finding than judge).

There are cases in which a court may have little doubt that any fact finder would conclude that a particular defendant required an extended period of incarceration in order to protect the public.  For example, reasonable finders of fact would be unlikely to disagree in concluding that a defendant convicted of murder, with a long history of convictions for violent crimes, must receive an extended sentence in order to protect the public.  If a judge rather than a jury were to make the public protection determination in such a case, the resulting *Apprendi* violation would likely be harmless.  Where finders of fact could reasonably differ as to the public protection finding, however, a court may have grave doubt as to whether a jury would have reached the same conclusion as the trial judge.  In such circumstances, under the grave doubt formulation of *Brecht*, a court would likely conclude that the decision to allow the judge rather than the jury to make the public protection finding had a substantial and injurious effect on the sentence.

In the instant case, after reviewing the entire record, the court has grave doubt as to whether the jury would have made the same public protection

determination as the trial judge.  The judge relied in part on the quantity and seriousness of the Jess's prior criminal conviction in reaching the conclusion that an extended sentence is necessary to protect the public.  Jess's criminal history, while certainly extensive, does not stand out as necessarily deserving of an extended sentence.  Nearly all of Jess's convictions are for shoplifting and, prior to the instant offense, he had never used a weapon in connection with any of his crimes.  Jess's current offense is more serious than his prior record:  Jess used a knife in order to rob a cab driver and steal his cab.  While a jury could certainly agree with the trial judge that an extended sentence is necessary to protect the public from Jess, the court concludes that a jury could have just as easily found that an extended sentence was not necessary in this case.  Because the court has grave doubt as to whether the jury would have reached the same public protection finding as the judge, the *Apprendi* error was not harmless.

//

//

//

//

//

//

## IV.  CONCLUSION

For the foregoing reasons, this court GRANTS the petition for a writ of habeas corpus.  The State of Hawaii is ordered to resentence Jess in a manner consistent with this order.  The Clerk of the Court is directed to enter judgment in Jess's favor and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 18, 2006.



J. Michael Seabright
United States District Judge

*Jess v. Peyton, et. al.*, Civ. No. 04-00601 JMS/BMK, Order Granting Petitioner's
28 U.S.C. § 2254 Petition for Writ of Habeas Corpus to Vacate Extended Sentence