IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN JESS, | ) CIV. NO. 04-00601 JMS/BMK |
| | ) |
| Petitioner, | ) MEMORANDUM IN SUPPORT |
| | ) |
| vs. | ) |
| | ) |
| JOHN F. PEYTON, Director, | ) |
| Department of Public Safety, State of | ) |
| Hawaii; LANE BLAIR, Warden, | ) |
| Diamondback Correctional Facility, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## <u>MEMORANDUM IN SUPPORT</u>

1.     Nearly four months ago, on April 18, 2006, this Court granted petitioner's request for a writ of habeas corpus.  <u>See</u> <u>Jess v. Peyton</u>, 2006 WL 1041737 (D. Haw. 2006).  This Court ruled that "the State's extended sentencing scheme violates the Sixth Amendment." <u>Id.</u> at *4.  This Court's ruling accords with the Ninth Circuit's decision in <u>Kaua v. Frank</u>, 436 F.3d 1057 (9th Cir. 2006) (<u>Kaua III</u>).  In Kaua's case, the Hawaii Supreme Court affirmed Kaua's extended-term sentences, holding that they were not imposed in violation of the Sixth Amendment because they were based on "extrinsic" facts that were "outside the <u>Apprendi</u>[1] rule." <u>State v. Kaua</u>, 72 P.3d 473, 484-485 (Haw. 2003) (<u>Kaua I</u>).  The

---

[1] <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

Ninth Circuit, however, held that Kaua I was "contrary to the U.S. Supreme Court's decision in Apprendi." Kaua III, 436 F.3d at 1062. This Court's ruling is also consonant with rulings in this district in other, similar habeas proceedings. See, e.g., Kamana'o v. Peyton, 2006 WL 1775869 at *4 (D. Haw. 2006) (ruling that Kaua III "held that Hawaii's extended term sentencing law for multiple offenders, Haw. Rev. Stat. § 706-662(4), violates Apprendi" and granting habeas relief); Kaua v. Frank, 350 F.Supp.2d 848 (D. Haw. 2004) (Kaua II). Upon concluding that it harbored "grave doubt" about whether the constitutional violation was harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993), this Court ordered the State "to resentence Jess in a manner consistent with this order." Jess, 2006 WL 1041737 at *6-*7.

The State has not yet resentenced Jess. One of the State's attorneys, Deputy Prosecuting Attorney (DPA) Jean Ireton, initially sought to comply with this Court's order by requesting that the state circuit court issue an amended judgment, resentencing petitioner to the ordinary, non-extended terms of imprisonment authorized by the jury's verdict in petitioner's case.[2] See Haw. Rev. Stat. §§ 706-659

---

[2] In Kaua's case, the State similarly failed to produce an amended judgment authorizing its continued custody of Kaua pending the State's appeal in his habeas proceeding. After Kaua filed a motion -- similar to the one Jess files here -- seeking an order regarding the execution of this Court's judgment in his case, the State obtained an amended judgment.

2

and 706-660. DPA Jean Ireton's motion for resentencing is attached as Appendix A.[3] In it, she, on behalf of the State, summarizes this Court's order as "direct[ing] the Circuit Court of the First Circuit, State of Hawaii, to resentence Defendant Jess without an extended term of incarceration." App. A at 2; <u>see also</u> <u>id.</u> at 6 (noting that this Court's ruling "ordered the State to resentence Defendant without the extended term enhancement"). DPA Ireton also served present counsel with a copy of her motion. <u>See</u> App. A at 8. The motion was set for hearing on July 3, 2006, in the state circuit court.

A few days before the scheduled hearing, however, Jess's counsel in this Court had a telephone conversation with a different DPA, DPA Scott Bell. DPA Bell asserted that he, not DPA Ireton, would be representing the State at the hearing. And, contrary to the position DPA Ireton had taken in the State's motion for resentencing, DPA Bell informed counsel that he would be orally moving for imposition of *consecutive* ordinary terms of imprisonment. Counsel for Jess promptly sent a letter to the state circuit court, setting out at some length the reasons why ordering consecutive sentencing would violate several state and federal legal doctrines,

---

[3]  Jess has omitted the exhibits DPA Ireton appended to her motion.

constitutional provisions, and the import of this Court's order.  A copy of counsel's letter is attached as Appendix B.[4]  Counsel served several DPAs with the letter.

The July 3rd hearing was continued several times and eventually set for August 10, 2006.  The morning of the hearing, Jess's undersigned counsel in this Court retrieved a voicemail message from and had a conversation with Jess's last counsel of record in the state courts, Emlyn Higa.  Mr. Higa reported that a third DPA had taken over the case, DPA Christopher Van Marter.  Mr. Higa further informed undersigned counsel that DPA Van Marter had formally withdrawn DPA Ireton's motion for resentencing and, in its stead, filed a motion he styled the "State's Second Motion For Extended Term Of Imprisonment."  A copy of DPA Van Marter's motion is attached at Appendix C.[5]  Unlike DPA Ireton, who courteously served her motion on undersigned counsel, DPA Van Marter has not bothered to serve a copy of his withdrawal of her motion or a copy of his own "second" motion seeking an extended sentence on undersigned counsel.

The August 10th hearing did not occur and has been continued until August 31st.  The reason that the hearing did not occur was because DPA Van Marter

---

[4]  Jess has omitted an enclosure -- a copy of this Court's order granting his petition -- he included in his letter.

[5]  Jess has omitted the exhibits that DPA Van Marter attached to his motion.

apparently determined that he had a more important, unrelated matter to conduct before the Oahu grand jury.

In his "second" motion seeking to resentence Jess to an extended term, DPA Van Marter, "pursuant to [Haw. Rev. Stat. §§] 706-661 and 706-662(1) and (4)(a) …, hereby moves [the state circuit court] to sentence Brian Jess to an extended term of imprisonment for life." App. C at [1]. In a "Declaration of Counsel," DPA Van Marter lays out the procedural history of the present matter and the state court proceedings leading up to it. At odds with what DPA Ireton represented as the State's position, DPA Van Marter represents the State's view of this Court's ruling in petitioner's case as being that this Court "held that the determination that Defendant's commitment for an extended term is necessary for the protection of the public *must be submitted to a jury* and proven beyond a reasonable doubt." App. C at 5 (original emphasis). DPA Van Marter emphasizes that "[t]he State of Hawaii does not waive its right to seek an extended term of incarceration."[6]  And he asserts that, "to

---

[6] Especially in light of this Court's ruling in this and other habeas proceedings and the Ninth Circuit's decision in <u>Kaua III</u>, it is a bit much to refer to the State as having some "right" to seek an extended-term sentence under the existing, *un*constitutional scheme codified in Haw. Rev. Stat. §§ 706-661, 706-662, and 706-664.  Even more absurd is presenting it as on a par with a defendant's *constitutional* rights to jury trial and due process, as DPA Van Marter does in his motion.  <u>See</u> App. C. at 5.  A defendant's constitutional rights simply cannot be equated with a State's stubborn, and unreasoned, insistence that it has some "right" to impose an unconstitutional sentence on the defendant.

resentence Defendant in a manner consistent with [this Court's] order[,] the state court *must* impanel a jury and the prosecution must prove beyond a reasonable doubt that Defendant's commitment for an extended term is necessary for the protection of the public."  App. C at 5 (emphasis added).  DPA Van Marter then lays out a series of procedures he claims the state court should follow, and urges the court, once the jury makes the public-protection finding, to resentence Jess as a persistent and multiple offender under Haw. Rev. Stat. §§ 706-662.[7]

---

Even if this Court were to ignore its own and the Ninth Circuit's decisions on the matter, the statutes themselves to not purport to vest the State with some sort of "right" to seek an extended term sentence.  Rather, those statutes merely vest the *state circuit courts* with the *discretion* to impose an extended-term sentence in certain cases.  Since the state circuit court *always* retains the discretion to *not* impose an extended-term sentence, *even if* the State establishes beyond a reasonable doubt that at least one of Haw. Rev. Stat. § 706-662's aggravating criteria exists, the State *never* has a *right* to imposition of an extended-term sentence.  Only if the relevant statutes laid out a *mandatory* scheme, under which the court was *required* to impose an extended-term sentence if the state established an aggravating criterion beyond a reasonable doubt, would the State then have a statutory "right" to such a sentence in an appropriate case.  Hawaii's extended-term sentencing statutes, however, do not enact such a mandatory scheme.

[7]  Inexplicably, DPA Van Marter's motion concludes with a gratuitous assertion that petitioner is "a 'career offender'" and lists eighteen prior convictions that Jess incurred between 1992 and 1999, and a 1981 deferred acceptance of guilty (DAG) plea, in support of this claim.  The DAG and nine of these convictions were for the *misdemeanor* offense of third-degree theft, while another seven of the convictions were for the *petty misdemeanor* offense of fourth-degree theft.  One conviction was for second-degree theft, which state law defines, by the way, as a non-violent offense.  And one conviction was for first-degree criminal trespass, which is also defined as a non-violent offense.  There is no "career offender" extended-term criterion in Haw. Rev. Stat. § 706-662.

2.    In granting habeas relief to petitioner,[8] this Court necessarily vacated the State's judgment against petitioner to the extent that it authorized extended-term sentences.  And this Court expressly ordered the State "to resentence" petitioner "in a manner consistent with [its] opinion."  Jess, 2006 WL 1041737 at *6. This Court's "opinion" was that the existing "extended term sentencing scheme violates the Sixth Amendment."  Id. at *4; see also infra note 11.  Resentencing Jess pursuant to the very scheme that this Court ruled unconstitutional does not resentence Jess in a manner consistent with that ruling.

Absent a valid judgment, the State's continued custody of petitioner is unauthorized.  In light of the State's dalliance in resentencing petitioner in accord with this Court's order petitioner brings this motion for an order directing the State to execute this Court's judgment or, failing to do so within a prescribed time, for petitioner's immediate release from the State's custody.  This Court's oversight of the execution of its order at this point is all the more necessary given DPA Van Marter's brazen defiance of this Court's order.  Purporting to execute this Court's *explicit* ruling that the existing extended-term sentencing scheme is unconstitutional, DPA

---

[8]  The relief petitioner expressly requested was that this Court "vacate the state trial court's order granting the State's motion for imposition of extended-term sentences; vacate [his] extended-term sentences; [and] direct the trial court to enter an amended judgment, imposing the ordinary terms of imprisonment authorized by the jury's guilty verdicts[.]"

7

invokes, with unabashed double-speak, *that very sentencing scheme* to resentence Jess "in a manner consistent with" this Court's ruling to an extended life term on his class-A felony conviction,[9]

3.    DPA Van Marter's view that empaneling a jury to make the public-protection finding is, not to put too fine a point on it, ludicrous.

For one thing, there is no statutory authority in Hawaii for doing so when it comes to imposing an extended-term sentence under either Haw. Rev. Stat. §§ 706-662(1) or 706-662(4). These are the statutory provisions DPA Van Marter invokes in his motion, but they are also the very provisions that this Court ruled unconstitutional. The state legislature has not amended these provisions. Thus, the existing extended-term sentencing scheme requires that "the court" make the requisite determinations. And there is no state court decision in Hawaii construing the phrase "the court" as authorizing a jury to make the public-protection and supporting findings Haw. Rev. Stat. §§ 706-662(1) and 706-662(4) require in order to impose extended-term sentences on a 'persistent offender' or 'multiple offender.'[10]

---

[9]  Throughout his motion, DPA Van Marter refers to what he seeks as "an extended term" or "an extended term for life." As such, it would seem that he appears to acknowledge, albeit tacitly, that an extended term cannot now be sought for Jess's class-C felony offense, since the ordinary, five-year term for that offense has now run.

[10]  In his motion, DPA Van Marter urges the state circuit court to adopt procedures akin to those that the Hawaii Supreme Court reaffirmed in State v. Peralto, 18 P.3d 203 (Haw. 2001). See App. C at 6. In Peralto, the Hawaii Supreme Court

In fact, Hawaii precedent is *expressly* to the contrary.  In the context of

extended-term sentencing of 'persistent offenders' and 'multiple offenders' under

---

addressed the constitutionality of Haw. Rev. Stat. § 706-657, not Haw. Rev. Stat. § 706-662.  Section 706-657 allows for enhancing a sentence for second-degree murder from life with the possibility of parole to life without the possibility for parole upon a finding that the murder was "especially heinous, atrocious, or cruel" such that it "manifest[ed] exceptional depravity."  The Peralto Court held that this statute was not unconstitutionally vague because it only applied when the defendant inflicted "unnecessary torture on the murder victim and the victim in fact suffers unnecessary torture."  Peralto, 18 P.3d at 208.  After holding that its limiting construction of § 706-657 applied retroactively to the defendants before it, the Peralto Court clarified -- and this, presumably is why DPA Van Marter cites it -- "the procedures for the … § 706-657 hearing."  Peralto, 18 P.3d at 210.  The Peralto Court directed that the jury's findings under the statute would have to be unanimous.  See id.

In a prior case, State v. Janto, 986 P.2d 306 (Haw. 1999), the Hawaii Supreme Court in essence construed "the court," as it is used in Haw. Rev. Stat. § 706-657, to include a jury, such that the statute, so construed, authorized a jury to make the requisite finding.  Granted, the Janto Court itself merely asserted that the statute, as drafted to require a judge to make the "intrinsic" heinous, atrocious, and cruel finding, was unconstitutional (under the Hawaii Constitution), in light of the line of cases culminating in Tafoya.  And the Janto Court appears to have simply held, as self-evident *ipsi dixit*, that a jury could and had to make the intrinsic finding Haw. Rev. Stat. § 706-657 required in order to enhance the sentence for second-degree murder.  See Janto, 986 P.2d at 320-321.  The Janto Court then went on to judicially prescribe -- in a section of the decision that can only be read as an act of judicial legislation -- a "solution to this issue," which involved bifurcating the jury's consideration of guilt from its consideration of the sentencing enhancement.  See id. at 321-322.

Peralto is the *only* authority cited in DPA Van Marter's motion.  It and the line of state cases expressly do not pertain to the statutes at issue here.  More importantly, neither Peralto nor Janto addressed the latent due process problem, under Bouie v. City of Columbia, 378 U.S. 347 (1964), with the Hawaii Supreme Court's retroactive application of judicial decisions adopting a new construction of the statute and new judicial procedures for increasing the defendant's sentence.

9

Haw. Rev. Stat. §§ 706-662(1) and 706-662(4), the Hawaii Supreme Court has definitively construed Haw. Rev. Stat. §§ 706-662(1) and 706-662(4), not only as not requiring, but as *not permitting* jury findings on "extrinsic" facts, such as the public-protection finding and any findings made in support of it.  See Kaua I, 72 P.3d at 484-485 (holding that "the facts at issue in rendering an extended term sentencing determination under [Haw. Rev. Stat. §§] 706-662(1), (3), and (4) implicate considerations completely 'extrinsic' to the elements of the offense with which the defendant was charged and of which he was convicted; *accordingly, they should be found by the sentencing judge*" (emphasis added)); id. at 483-484 (reaffirming "that to extend" the Apprendi rule "to 'extrinsic' facts 'would contaminate the jury's required focus on the factual circumstances surrounding the charged offense and potentially require the introduction of inadmissible prior bay act or overly prejudicial evidence to require the jury to make such findings'" (quoting State v. Tafoya, 982 P.2d 890, 902 n. 15 (Haw. 1999)) (brackets omitted)); Tafoya, 982 P.2d at 902 n. 15 ("'extrinsic' factors … are not facts susceptible to jury determination"); id. at 903 ("'extrinsic' factors are … the province of the sentencing court," not a jury).  Since the Hawaii Supreme Court has construed the statutes at issue, this Court is bound by the Hawaii Supreme Court's pronouncement that "the court" means, in the context of finding an extended-term sentence necessary for the protection of the public under

Haw. Rev. Stat. § 706-662(1) and 706-662(4), "the court," not a jury.[11]    See Woodford v. Visciotti, 537 U.S. 19 (2002); City of Chicago v. Morales, 527 U.S. 41, 61 (1999); Wisconsin v. Mitchell, 508 U.S. 482, 485 (1993); Himes v. Thompson, 336 F.3d 848, 853-854 (9th Cir. 2003).

---

[11]  Principles of comity generally preclude this Court from construing a state statute.  Only in two circumstances may this court do so.  The first is when state precedent has not construed the statute at issue.  See Himes, *infra* in text.  The second is if the construction of a statute adopted in state precedent is an "obvious subterfuge to evade consideration of a federal issue," Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975).  As noted above, the Hawaii Supreme Court *has* construed the statutes at issue.  It has construed these statutes to require a judge, and to not allow for a jury, to make the public-protection finding.  This construction is not an obvious subterfuge to *evade* the constitutional issue.  It *creates* the constitutional issue.

More important to note, however, is that DPA Van Marter's motion is predicated upon a mistaken view of what this Court ruled in its order.  This Court did not, as DPA Van Marter emphasizes it, rule "that the determination that Defendant's commitment for an extended term is necessary fort the protection of the public *must be submitted to a jury* and proven beyond a reasonable doubt."  App. C. at 5 (original emphasis).  This Court did *not* reconstrue Haw. Rev. Stat. §§ 706-661, 706-662, and 706-664.  In other words, this Court did *not* rule that "the court," as used in these statutes, meant "the jury" as well as or instead of "a judge."

Rather, what this Court ruled was that Apprendi and the Sixth Amendment required the jury to find even "extrinsic" facts (other than the fact of a prior conviction) when the State made such facts necessary to justify increasing the defendant's maximum sentence.  Because Hawaii's extended-term sentencing scheme, as definitively construed by the Hawaii Supreme Court, did not commit such facts to a jury, it was unconstitutional and any sentence imposed pursuant to that scheme was and would be invalid.  DPA Ireton had it right:  entry of an amended judgment is the appropriate way to execute this Court's order, since extended-term sentencing under the statutes as they presently exist and have been construed is simply not an option … at least, not a constitutional one.

The state circuit court is also bound by the Hawaii Supreme Court's cases in this regard. As such, another flaw with DPA Van Marter's "second" motion seeking to extend petitioner's sentence on his class-A felony under Haw. Rev. Stat. §§ 706-662(1) and 706-662(4) is that, to grant his motion, the state circuit court would have to *overrule* the Hawaii Supreme Court's decisions holding that the court, not a jury, is to make the disputed public-protection finding and its supporting 'extrinsic' findings.[12]

In sum, neither any statutory provision nor any decisional law in Hawaii authorizes or even condones what DPA Van Marter seeks to do. And because what he seeks to do flagrantly flouts this Court's ruling that the very statutes he proposes to resentence petitioner under are unconstitutional, petitioner urges this Court to grant the present motion and expressly direct that the State file in this Court, within fifteen days, an amended judgment resentencing Jess to ordinary terms of imprisonment.

4.    In the letter attached as Appendix B, counsel for Jess explicates why consecutive sentencing is not an option at this point. And since adopting DPA Van Marter's suggestion that a jury be empaneled would, at the very least, violate due

---

[12]    The State's remedy for the unconstitutionality of its extended-term sentencing scheme is to enact a new extended-term sentencing scheme that accords with the United States Constitution. Its remedy is not, as DPA Van Marter seems to think, to hoodwink a state circuit court into reconstruing or otherwise into judicially amending the existing scheme.

process under Bouie, *supra*, it is not an option either.  Rather, the only option at this point that the State has with regard to *Jess* is to obtain an amended judgment that resentences him to a five-year term of imprisonment for his class-C felony and to a twenty-year term of imprisonment for his class-A felony.  As noted, these sentences can only be ordered to run concurrently, if they are to not raise the specter of being unlawful or unconstitutional.  The State's continued custody of Jess would be authorized, therefore, only with regard to the class-A felony, for the five-year sentence on his class-C felony has run.

        5.    Because it may have contributed to DPA Van Marter's mistaken belief that resentencing petitioner under Haw. Rev. Stat. § 706-662 by getting a jury to make the disputed findings is "consistent with" this Court's order, petitioner notes that intervening United States Supreme Court decisions reflect that this Court's harmless-error analysis under Brecht was flawed.  Because there is no procedure set forth in either a Hawaii statute or any Hawaii decisional law that allows a jury to *ever* make the disputed factual findings at issue here in the first place (or on remand in this or any other proceeding), state law simply precludes even posing the applicable harmless-error question.  That question is whether there is a reasonable possibility that a jury would have found the public-protection fact and the supporting facts that the judge found to justify extended-term sentences.  In Hawaii, there is *no* possibility, reasonable or not, that a jury could have found the requisite "extrinsic" facts, since

state law does not presently allow a jury to even consider the matter. The absence of any proper procedure under state law by which a jury is authorized to make the disputed findings renders the constitutional violation under <u>Apprendi</u> in petitioner's case (and any other similarly-situated petitioner's case) prejudicial.

Supreme Court cases from last term bear this out. In <u>Washington v. Recuenco</u>, ___ U.S. ___, No. 05-83 (2006), the Supreme Court noted that "[i]f respondent is correct that Washington law does not provide for a procedure by which his jury could have made a finding pertaining to [the fact that increased his maximum sentence], that merely suggests that respondent will be able to demonstrate that the <u>Blakely</u> violation in this particular case was not harmless." Slip op. at 4 (emphasis omitted). And as the Supreme Court more generally observed in <u>United States v. Gonzalez-Lopez</u>, ___ U.S. ___, No. 05-352 (2006), "[h]armless-error analysis in such a context [where counsel of choice was denied, and, thus, where it is "impossible to know what different choices the rejected counsel would have made" from those made by the actual counsel forced upon the defendant] would be a speculative inquiry into what might have occurred in an alternative universe." Slip op. at 10.

In petitioner's case, this Court correctly noted that "<u>Brecht</u> analysis does not apply neatly to the review of <u>Apprendi</u> error" and that attempting to apply it "would require more speculation than analysis." <u>Jess</u>, 2006 WL 1041737 at *5. Yet, this Court took a mis-step in finding refuge in <u>O'Neal</u>'s "grave doubt" rider to <u>Brecht</u>.

14

See id. at 13-15.  In this part of its analysis, this Court remarked that "[t]he question thus becomes whether the court has grave doubt that the jury would have reached the same conclusion regarding the need for public protection as the judge did."  Id. at 13. Recuenco and Gonzalez-Lopez reflect that, while this may properly phrase the requisite question under Brecht in a jurisdiction that has some procedure in place by which a jury could determine the disputed facts, it does *not* do so in a jurisdiction, like Hawaii, that has failed to articulate, be it legislatively or in a judicial decision, such a procedure.  Indeed, in Hawaii a specific statute *precludes* a jury from making the requisite findings and mandates that "the court" make the findings necessary to impose an extended-term sentence at a separate sentencing proceeding conducted after the jury has determined guilt.  See Haw. Rev. Stat. § 706-664.

Thus, in Hawaii at least, there simply are *no* cases in which it can be determined that a jury would have made findings justifying imposition of an extended-term sentence on a 'persistent offender' or a 'multiple offender' under Haw. Rev. Stat. §§ 706-662(1) and 706-662(4).  The "alternate universe" that would need to be speculatively posited to conduct any sort of harmless-error analysis in the context of the present matter would not only necessitate imagining some hypothetical jury deciding the requisite facts.  It would also necessitate imagining a hypothetical state legislature enacting different statutes than it has.  And more.  It would require imagining a hypothetical state governor signing such statutes into law.  And, perhaps

15

most difficult of all to imagine actually happening, it would require imagining a

hypothetical state judiciary construing these hypothetical statutes as not excising

"extrinsic" facts from our hypothetical jury's purview, be it for reasons of purported

"fairness" to the defendant or because they are otherwise deemed to be "outside" the

Apprendi rule.  The present state of things does not bring us within the realm of this

alternate universe.

In any event, Jess must be resentenced under the sentencing statutes as

they were in effect and construed when he committed his offenses.[13]  DPA Van

Marter would have a lower state court effectively overrule established Hawaii

Supreme Court precedent by judicially legislating a unique procedure that violates not

only rudimentary principles of due process under Bouie and the United States

Constitution, but violates unambiguous state law.[14]  His bid to so defy this Court's

---

[13]  Lest an *ex post facto* problem arise.  The only exception to the general principle that a defendant must be tried and sentenced under the statutes as they existed when he committed his crime is when a statute does not expand the scope of his criminal liability, be it by more expansively defining the offense, by decreasing the quantum of evidence necessary to convict, or by increasing his punishment for the offense.

[14]  Haw. Rev. Stat. § 706-600 provides that "[n]o sentence will be imposed otherwise than in accordance with this chapter."  Jess says it again, *nothing* in Haw. Rev. Stat. ch. 706 authorizes a jury to find, for purposes of Haw. Rev. Stat. §§ 706-662(1) and 706-662(4), that an extended-term sentence is necessary for protection of the public.

16

order, in lieu of simply obtaining an amended judgment authorizing the State to hold

Jess in custody for up to twenty years, must therefore be halted.

      6.    This Court has jurisdiction to entertain this motion and issue the

requested order.  That the State has filed a notice of appeal in this case does not divest

this Court of jurisdiction to grant the relief petitioner requests.  See Fed. R. App. P.

23;[15] Stein v. Wood, 127 F.3d 1187 (9th Cir. 1997).  In Stein, the Ninth

---

[15] Fed. R. App. P. 23 provides, in relevant part:

(b)    Detention or Release Pending Review of Decision Not to Release.
While a decision not to release a prisoner is under review, the court or
judge rendering the decision, or the court of appeals, or the Supreme
Court, or a judge or justice of either court, may order that the prisoner
be:

    (1)    detained in the custody from which release is sought;

    (2)    detained in other appropriate custody; or

    (3)    released on personal recognizance, with or without surety.

(c)    Release Pending Review of Decision Ordering Release.  While a
decision ordering the release of a prisoner is under review, the prisoner
must -- unless the court or judge rendering the decision, or the court of
appeals, or the Supreme Court, or a judge or justice of either court
orders otherwise -- be released on personal recognizance, with or
without surety.

(d)    Modification of the Initial Order on Custody.  An initial order
governing the prisoner's custody or release, including any recognizance
or surety, continues in effect pending review unless for special reasons
shown to the court of appeals or the Supreme Court, or to a judge or

Circuit held that a district court retains jurisdiction, even after the filing of the notice

of appeal, over a state prisoner's motion in a habeas case for an order directing his

---

justice of either court, the order is modified or an independent order
regarding custody, release, or surety is issued.

As presently postured, this case is, admittedly, an awkward fit in any of the three categories specified in Fed. R. App. P. 23, since this Court never issued an initial order expressly addressing the petitioner's custody. The best fit, however, given that this Court granted his petition and issued the writ Jess requested is subsection (c), which actually mandates release pending review of a decision ordering release, which, in turn, usually only occurs when a writ of habeas corpus is granted, as was Jess's.

Granted, it may be an oversimplification to read subsection (b) as targeting situations where the writ has been denied and subsection (c) as targeting situations where the writ has been granted. But it is clear that, since there has not yet been "an initial order" in this case, subsection (d)'s restrictions on modification of such an initial order are not applicable. And, indeed, given that subsections (b) and (c) govern the issuance of an initial order regarding custody, the most natural, common sense reading to give "the decision" referred to in the introductory phrase in each subsection -- "[w]hile a decision not to release a prisoner is under review … [,]" Fed. R. App. P. 23(b); "[w]hile a decision ordering the release of a prisoner is under review … [,]" Fed. R. App. P. 23(c) -- is to have it signify the decision to deny or grant the writ. To read "decision" in each of these subsections as, literally, signifying an initial, express order on the petitioner's custody or release would render each subsection nonsensically circular, for then the authority to issue an order, for example, that the prisoner be detained in the state's custody, or some other appropriate custody, or released on personal recognizance under subsection (b) would only be triggered by the very order directing that the prisoner be detained in the state's custody, or some other appropriate custody, or released on personal recognizance. It is unlikely that the intent of those who drafted the rules of appellate procedure was to create such a counterintuitive result. Be that as it may, the point is simply that Fed. R. App. P. 23 and Stein clearly provide this Court with the authority to issue an initial order regarding a habeas petitioner's custody or release pending appellate review on the merits of the petitioner's habeas claim.

immediate release.  See Stein, 127 F.3d at 1188.  And, in doing so, the Ninth Circuit also noted that the district court retains jurisdiction to ensure that its judgment is executed.  See id. at 1189 (noting that the district court retains jurisdiction pending appeal to aid "execution of a judgment that has not been superseded" (citing In re Thorp, 655 F.2d 997, 998 (9th Cir. 1981)).

Stein filed a habeas petition in federal court under 28 U.S.C. § 2254 contesting his state conviction and sentence for three counts of attempted first degree murder and one count of burglary.  See Stein, 127 F.3d at 1188.  The district court granted the State of Washington summary judgment on most of Stein's claims.  But, after an evidentiary hearing on several other claims, it granted Stein a writ of habeas corpus on his claim that Washington had deprived him of his right to direct appeal. See id.  Like this Court in petitioner's case, the federal district court in Stein did not immediately release the petition.  Rather, it conditioned the writ, directing Washington to reinstate Stein's right to appeal within 90 days.  See id.  This Court's issuance of the writ in petitioner's case was similarly, albeit tacitly, "conditional." The condition implicit in this Court's issuance of the writ was that the State resentence Jess in a constitutional fashion, pursuant to the state sentencing statutes that could be properly applied to him.

In addition to the district court's summary judgment ruling on his other claims, Stein appealed the federal district court's issuance of a "conditional" writ,

under which he would not be released unless Washington did not reinstate his direct appeal.  See id.  The Ninth Circuit affirmed the district court's judgment.  See ibid. However, while the appeal was pending, Stein filed a motion in the district court, akin to Jess's here, seeking an order directing his immediate release, since Washington had not reinstated his right to appeal and, thus, had not complied with the district court's writ of habeas corpus.  See id.  The district court dismissed the motion for lack of jurisdiction, reasoning that the filing of the notice of appeal had divested it of jurisdiction to hear it.  See id.  The Ninth Circuit held that the district court erred in ruling that it lacked jurisdiction to entertain such a motion while the appeal was pending.  See id. at 1189-1190.

It is well established that, generally speaking, the filing of a notice of appeal "divests a district court of jurisdiction over those aspects of the case involved in the appeal."  Id. at 1189 (citations omitted).  This general rule is not absolute and is riddled with exceptions.  See ibid.  Among other things, a district court retains jurisdiction pending appeal to correct clerical errors or clarify its judgment, or to supervise the status quo pending appeal, or to correct an illegal sentence.  See id. (citations omitted).  Important here is that this Court retains jurisdiction to aid in the "execution of [its] judgment."  See id. at 1189-1190.  This includes, as was at issue in Stein, whether the State has complied with any explicit or implicit conditions attached to a writ of habeas corpus.  See id.

20

This Court also retains jurisdiction -- as <u>Stein</u> held -- over a petitioner's custody or release in a habeas proceeding pending appeal.  <u>See id.</u>  The <u>Stein</u> Court adopted the reasoning of the Third and Sixth Circuits and of one of this Court's sister district courts.  <u>See id.</u> (discussing <u>Jago v. U.S. Dist. Ct., N. Dist. of Ohio</u>, 570 F.2d 618 (6th Cir. 1978); <u>United States ex rel. Thomas v. New Jersey</u>, 472 F.2d 735 (3rd Cir. 1973); <u>Franklin v. Duncan</u>, 891 F. Supp. 516, 518 (N.D. Cal. 1995)).  Essentially, these courts all reasoned that the district court retained jurisdiction because "the question concerning the physical custody of the [petitioner] pending further review does not affect the matters involved in the appeal itself."  <u>Stein</u>, 127 F.3d at 1189 (quoting <u>Jago</u>, 570 F.2d at 611); <u>accord</u> <u>Thomas</u>, 472 F.2d at 742-743 (district court retains jurisdiction to issue orders regarding petitioner's custody or release pending appeal); <u>Franklin</u>, 891 F. Supp. at 518 (same).

Jess does not go so far as the petitioners in <u>Stein</u>, <u>Jago</u>, <u>Thomas</u>, and <u>Franklin</u> did.  His primary request herein is not that he be immediately released, but that the State be ordered to produce a valid amended judgment in this Court within a prescribed time period.  He requests that this time period be no greater than fifteen days, given the lapse of time that has already occurred and the State's now obvious machinations to circumvent the clear import of this Court's order granting Jess habeas relief.  Moreover, entry of an amended judgment imposing ordinary terms of imprisonment is little more than ministerial in nature and should not require an

inordinate amount of time or expense.  Only if the State fails to produce a valid judgment, does petitioner urge in the alternative that this Court order the State to release him from its custody.  While admittedly drastic, such a remedy is the only option available, unless this Court is to acquiesce in the notion that a State may hold someone in indefinite custody without *any* legal authority to do so.

*      *      *

In light of the foregoing, petitioner respectfully requests that this Honorable Court order the State to produce a valid amended state court judgment authorizing the State's continued imprisonment of him under the ordinary terms of imprisonment permitted under H.R.S. §§ 706-659 and 706-660.  If the State fails to do so by a date prescribed by this Court (but which petitioner proposes be no greater than fifteen days from the issuance of an order granting this motion), petitioner then requests that this Court order his immediate release, subject to any reasonable conditions this Court sees fit to impose until the State's appeal is resolved.

DATED:  Honolulu, Hawaii, August 14, 2006.


_____
PETER C. WOLFF, JR.
Attorney for Petitioner
BRIAN JESS