PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:      fpdhi@hotmail.com

Attorney for Petitioner
BRIAN JESS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN JESS, | ) CIV. NO. 04-00601 JMS/BMK |
| | ) |
| Petitioner, | ) PETITIONER'S REPLY TO |
| | ) RESPONDENTS' MEMORANDUM |
| vs. | ) IN OPPOSITION TO PETITIONER'S |
| | ) MOTION FOR AN ORDER |
| JOHN F. PEYTON, Director, | ) REGARDING EXECUTION OF THIS |
| Department of Public Safety, State of | ) COURT'S JUDGMENT GRANTING |
| Hawaii;  LANE  BLAIR,  Warden, | ) PETITIONER'S SECTION 2254 |
| Diamondback Correctional Facility, | ) HABEAS PETITION |
| | ) |
| Respondents. | ) CERTIFICATE OF SERVICE |
| | ) |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN JESS, | ) CIV. NO. 04-00601 JMS/BMK |
| | ) |
| Petitioner, | ) PETITIONER'S REPLY TO |
| | ) RESPONDENTS' MEMORANDUM |
| vs. | ) IN OPPOSITION TO PETITIONER'S |
| | ) MOTION FOR AN ORDER |
| JOHN F. PEYTON, Director, | ) REGARDING EXECUTION OF THIS |
| Department of Public Safety, | ) COURT'S JUDGMENT GRANTING |
| State of Hawaii, et. al., | ) PETITIONER'S SECTION 2254 |
| | ) HABEAS PETITION |
| Respondents. | ) |
| | ) |

**PETITIONER'S REPLY
TO RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONER'S MOTION FOR AN ORDER REGARDING
EXECUTION OF THIS COURT'S JUDGMENT GRANTING
PETITIONER'S SECTION 2254 HABEAS PETITION**

Petitioner BRIAN JESS submits this reply to the memorandum in opposition to his motion for an order regarding execution of this Court's judgment granting his petition for a writ of habeas corpus under 28 U.S.C. § 2254 that the respondents (herein, "the State") have filed.  The State fails to advance any legitimate reason for not granting petitioner's motion.  Accordingly, this Court should order the State to produce, without delay, an amended state court judgment authorizing its continued custody of petitioner.  Failure to do so should result in petitioner's immediate release from the State's custody and, perhaps, other appropriate relief, such as sanctions on the State and/or the attorneys representing it in this matter.

## **ARGUMENT**

The State appears to have replied to a motion that Jess did not make.  It certainly hasn't replied to the one he *did* file.  The State fails to discuss or even *cite* the principal cases on which Jess relies and from which he modeled his motion.  See Stein v. Wood, 127 F.3d 1187 (9th Cir. 1997); In re Thorp, 655 F.2d 997 (9th Cir. 1981); Jago v. U.S. Dist. Ct., N. Dist. of Ohio, 570 F.2d 618 (6th Cir. 1978); United States ex rel. Thomas v. New Jersey, 472 F.2d 735 (3rd Cir. 1973); Franklin v. Duncan, 891 F.Supp. 516 (N.D. Cal. 1995).

Pursuant to Stein -- which is *directly* on point -- and these other cases, this Court retains jurisdiction in this matter to ensure that its order granting Jess a writ of habeas corpus is *lawfully and promptly* executed.  These cases also reflect that it is *this Court*, not a state court, that presently has the ultimate authority over the State's continued custody of Jess.  Having granted Jess's petition, it is only by virtue of this Court's implicitly conditional order that the State may continue to hold Jess in its custody.  The underlying state court judgment that gave rise to these habeas proceedings is effectively a nullity unless and until this Court's order is overturned on appeal.  Accordingly, an amended state court judgment must be produced, without further delay, authorizing the State's continued custody of Jess pending its appeal of this Court's order.  Otherwise Jess must be released, for the State's judgment-less imprisonment of him is patently unconstitutional.

In any event, the arguments that the State makes are entirely off-point, poorly reasoned, and, at times, utterly nonsensical.

1.    The State's first argument is that Jess's motion is "untimely." Memorandum In Opposition To Motion For An Order Regarding Execution Of This Court's Judgment Granting Petitioner's Section 2254 Habeas Petition (herein cited as "MO") at 6.  Citing Fed. R. Civ. P. 59(e), the State asserts that Jess was required to file his motion within ten days of this Court's judgment because it seeks "a significant alteration or amendment to the judgment." Id. Jess's motion does no such thing.  Rather, his motion seeks an order directing the State to *comply* with the judgment as it exists.  Nowhere in his motion does Jess request that this Court alter or amend its judgment or its order granting his petition.  Rather, his motion requests that this Court ensure that its order and judgment is executed, without further delay, and, if necessary, that it order Jess's immediate release.  As Stein and the other cases Jess cites in his memorandum in support of his motion on this point elucidate, this Court retains jurisdiction to ensure that the State timely, lawfully, and constitutionally complies with and executes its judgment and order granting Jess a writ of habeas corpus.  And, too, it is this Court that is responsible for supervising the State's continued custody of Jess.

In sum, Fed. R. Civ. P. 59(e) governs motions to alter or amend a civil judgement.  Jess's motion for an order regarding execution of this Court's judgment

3

in the present matter is not such a motion.  As such, Fed. R. Civ. P. 59(e)'s ten-day filing deadline is inapplicable.

The State's analysis on this point is not only off-point, it fails to account for Fed. R. Civ. P. 62(a).  Rule 62(a) provides, as is relevant here, that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry."  This rule *precludes* the State from executing this Court's judgment for the ten days following its entry and, in doing so, obviously precludes Jess from filing a motion seeking the execution of this Court's order within such a period.  Indeed, in light of Rule 62(a), the factual basis predicating a motion to execute could not even *arise* within the ten days following entry of a civil judgment.

The State's argument on this point seems to reflect its belief that, by calling Jess's motion something it quite clearly is not and simply ignoring the *directly on-point* and *binding* case (Stein), it can bamboozle this Court into ruling that Jess's motion is untimely because he did not file it within a time period that neither rule nor fact would have allowed him to file it within.  Jess has greater confidence in this Court's powers of legal analysis.

2.    The State's second argument is that this Court should "deny [the] motion for lack of subject matter jurisdiction."  MO at 6.  As discussed in Jess's memorandum in support of his motion, Stein holds that this Court retains jurisdiction

4

to entertain Jess's motion and to grant the relief he requests.  In lieu of discussing or even citing Stein, the State predicates its specious 'lack-of-jurisdiction' argument on the claim that "the issues presented [in Jess's motion] are not ripe for this Court's review."  MO at 6.  The State describes the core "contention" of Jess's motion as complaining about the State's proposal to empanel a sentencing jury to make the requisite public-protection findings.  MO at 7.  The State points out that the state circuit court has not yet granted the State's motion seeking to empanel such a jury and, too, that, even if it does, the jury might not make the public-protection findings authorizing an extended term on Jess's class-A felony.  MO at 7-8.  By the State's lights, this means that Jess faces no imminent harm, since the whole thing could become "moot" by either the state circuit court's failure to grant the State's motion or by a jury opting not to make the requisite findings.  MO at 8.

The State's characterization of Jess's motion is -- unsurprisingly -- misleading.  The core "contention" of his motion is that the State's *present* custody of him is not authorized by a valid state judgment.  The State did not seek to stay this Court's order pending appeal, nor would such a stay have been appropriate in any case.[1]  In granting Jess's petition, this Court's order and judgment necessarily vacated

---

[1]  In a nutshell, a request by the State for a stay of this Court's order pending appeal would have been without merit because, even if it loses on appeal, it is still entitled to imprison Jess under the ordinary term of imprisonment applicable to his class-A felony.  This twenty-year term will not expire prior to the conclusion of the

the underlying state court judgment that, up to that point, had authorized the State's custody of Jess. Presently, then, the *sole* authority for the State's continued custody of Jess flows from *this Court's* conditional order and judgment in the present matter. The Ninth Circuit's decision in <u>Stein</u> and other cases Jess cited on this point in his memorandum in support reflect as much. And this is why this Court retains the authority to issue an order directing a habeas petitioner's *immediate* release if the State fails to timely, lawfully, and constitutionally execute a writ of habeas corpus it issues.

Jess would be surprised if this Court intended that, under the rubric and authority of executing its order and judgment in his case, the State could lawlessly and unconstitutionally resentence Jess to the very sentence this Court held the State had unconstitutionally imposed in the first place. Hence Jess's discussion in his memorandum in support of his motion of what the State may *lawfully* do, under state statutory and decision law and federal constitutional law, when it comes to resentencing him. As Jess there lays out, the only lawful and constitutional option at this point -- at least vis-a-vis *Jess* -- is to amend the state court judgment to reflect imposition of concurrent, ordinary-term sentences on Jess's class-A and class-C

---

State's appeal in Jess's case. As such, it could not demonstrate irreparable injury, much less any of the other requirements, necessary to entitle it to a stay pending appeal.

felonies.   Curiously, if not tellingly, the State provides *no* argument in its

memorandum articulating the legality, be it under state law or federal constitutional

law, of what it proposes to do in state court in the name of executing this Court's

order and judgment in Jess's case.[2]

The State's "ripeness" argument is further flawed.  It seems to think that

it does not matter if it lawlessly and unconstitutionally subjects Jess to a certain

---

[2]   Moreover, the State's assertion in its memorandum that Hawaii's "courts
have not yet even considered the merits of" whether "impaneling of a jury to make
the 'public protection' determination is contrary to state statutes" is simply false. MO
at 12.  The Hawaii Supreme Court has had *numerous* opportunities to construe the
relevant statutes as allowing for a jury to make the public-protection finding and has
*expressly refused to do so*.  Indeed, the Hawaii Supreme Court's insistence that such
facts are to be entrusted to a judge, and withheld from a jury lest their "required focus
on the factual circumstances surrounding the offense" be "contaminate[d]," is
precisely what has given rise to Jess's (and other state prisoners') Apprendi claims.
State v. Tafoya, 982 P.2d 890, 902 n.15 (Haw. 1999); see also State v. Kaua, 72 P.3d
473, 485 (Haw. 2003) ("the facts at issue in rendering an extended term sentencing
determination under [Haw. Rev. Stat.] §§ 706-662(1), (3), and (4) implicate
considerations completely 'extrinsic' to the elements of the offense with which the
defendant was charged and of which he was convicted; accordingly, they should be
found by the sentencing judge in accordance with [State v. Huelsman, 588 P.2d 394
(Haw. 1978),] and its progeny"); Tafoya, 982 P.2d at 902-903 & n.15 (declining to
"extend" the rule that "any fact (other than prior conviction) that increases the
maximum penalty for a crime must be … submitted to a jury" to "extrinsic" facts
because such facts "are not facts susceptible of jury determination" and holding that
"'extrinsic' facts are properly within the province of the sentencing court"); id. at 904
n.19 ("[t]he finding whether an extended term of imprisonment is necessary for the
protection of the public, [which is] necessary for imposition of an extended term of
imprisonment … is *not* a factual finding susceptible of jury determination," and,
"[t]herefore, this finding is within the province of the sentencing court pursuant" to
Huelsman).

sentencing procedure if he, when all is said and done, is not actually resentenced to an extended term as a result. Harm lies in *subjecting* Jess to a sentencing procedure that is not unauthorized in state law, separate and apart from whatever the result may be. Cf. U.S. CONST. amend V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Abney v. United States, 431 U.S. 651 (1977). And, if nothing else, the legality of what is occurring in the state circuit court matters because what occurs there on 'remand' from this Court is being done under the purported authority *of* this Court. As noted above, Jess would be somewhat surprised if he learned that this Court did not care whether the State was, in the name of this Court, ignoring its own laws and the United States Constitution.

        3.      The State's final argument is that this Court should deny Jess's motion because it "involves undue federal interference in pending state proceedings concerning purely state issues." MO at 9. Citing Fifth Circuit cases, which this Court (if not the attorneys representing the State) is aware are not binding upon it, the State's argument on this point essentially consists of general invocations of principles of abstention and comity. The most evident problem with the State's argument on this point is that it is misdirected. Jess's motion seeks merely to have this Court direct the State to execute its order and judgment in his case. This Court's order does not, as has been noted, give the State license to violate state law or federal constitutional law. And what is even more curious is that, as least when it comes to

8

its "second" motion for an extended term, the statutes that the State invokes in its motion are the *very* statutes that this Court ruled were unconstitutional when it granted Jess habeas relief.

But it gets more curious still.  The main case it relies upon supports Jess's position, not the State's.  Tellingly, in its discussion of Smith v. Lucas, 9 F.3d 359 (5th Cir. 1993), the State fails to mention what the actual result was that the Fifth Circuit reached.  After concluding that the district court erred in specifically directing a state to commute an unconstitutional death sentence to life, the Fifth Circuit excised the commutation portion of the district court's order *but expressly retained* the portion of the order that directed the *immediate release* of the petitioner.  See Smith, 9 F.3d at 367-368.  The Fifth Circuit emphasized that there is "but one consequence" of a State's failure to "comply" with a conditional writ of habeas corpus.  Id. at 367.  And that consequence is the "immediate and unconditional release [of the petitioner] from his unconstitutional sentence."  Id.

The Ninth Circuit has never cited Smith.  But the result accords with Stein.  And other federal courts cite Smith, not as standing for the non-interference principle that the State teases from it, but for the straight-forward proposition that, "if a state fails to meet the condition" expressly or implicitly included in an order granting habeas relief, "the district court may order the petitioner's release" from the State's custody.  Phifer v. Warden, 53 F.3d 859, 864 (7th Cir. 1995); see also Gentry

9

v. Deuth, 436 F.3d 687, 691-692 (6th Cir. 2006).  Or, alternatively, federal courts cite it for the proposition that a federal district court retains jurisdiction in habeas proceedings to ensure that the State's execution of a conditional writ is constitutional, is "consistent with law," and is sufficient to cure the original constitutional infirmity. Battenfield v. Gibson, 236 F.3d 1215, 1235 (10th Cir. 2001); see also Paz v. Warden, 787 F.2d 469 (10th Cir. 1986).

4.    Indeed, Gentry and Phifer confirm, as Stein too reflects, that the arguments that the State advances are without merit and that this Court retains the jurisdiction and authority to issue the order that Jess requests in his motion.  The Sixth Circuit's discussion of the matter consisted of this:

> The Commonwealth next argues that the district court did not retain jurisdiction to hear this matter.  Again, the Commonwealth is incorrect.  In the first place, the sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life.  District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns.  Courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court. …. [L]ike absolute grants, [a conditional grant of the writ of habeas corpus] ordinarily and ideally operate[s] automatically, that is, without the need for the district court to act further.

Nevertheless, district courts retain jurisdiction to execute a lawful judgment when it becomes necessary. If the State complies with the order, the petitioner will not be released; if the state fails to comply with its order, release will occur. Ordinarily, the task that remains for the district court is the execution of the judgment. A federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case. A state's failure to timely cure the error identified by a federal district court in its conditional habeas order justifies the release of the petitioner.

Gentry, 456 F.3d at 691-692 (citations, quotation marks, and original brackets silently

omitted). And the Seventh Circuit similarly opined:

It is well-settled that a district court can order a petitioner's release. This, in fact, is the very essence of habeas relief. Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. This power continues even after courts grant conditional orders; if the state fails to meet the condition specified in the conditional order, the district court may order the petitioner's release. Conditional orders are essentially accommodations accorded to the state. They represent a district court's holding that a constitutional infirmity justifies petitioner's release. The conditional nature of the order provides the state with a window of time within which it might cure the constitutional error. Failure to cure that error, however, justifies the district court's release of the petitioner.

A conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate. In many cases, whether or not the state has complied will be apparent -- where, for instance, a court orders a new hearing and the state completely fails to provide one. In these cases, a specific assessment concerning compliance may be

11

> unnecessary -- the writ will simply issue because it is
> apparent that the state has not fulfilled its mandate.  In
> other cases, however, the district court will need to
> examine the content of the state's action to determine
> whether compliance was sufficient.

Phifer, 53 F.3d at 864-865 (citations and quotation marks silently omitted).

This Court, accordingly, retains jurisdiction over the execution of its order, the tacit condition of which was that the State produce a valid (i.e., constitutional and obtained in conformity with state law) judgment authorizing its continued custody of Jess.

5.    This Court's order did not -- contrary to the implicit assumption animating the State's opposition to Jess's motion and its "second" motion seeking an extended term on Jess's class-A felony in the state circuit court -- authorize the State to *unlawfully and unconstitutionally* resentence Jess.  If only tacitly, because anticipating the State's assumption to the contrary would have required a sixth sense this Court is not required to possess, it authorized the State to resentence Jess *without* violating the Constitution and without violating state statutory and decisional law that, in accord with the Constitution, applies to Jess.  For all the reasons set forth in his memorandum in support of his motion and in this reply, the State's "second" attempt to seek an extended term in Jess's case is outside the scope of this Court's order granting Jess's habeas petition.  Rather, the only *lawful* and *constitutional* thing the State can do at this point is to obtain, as it did in Kaua's case, and without any

12

further delay, an amended judgment imposing the ordinary-term sentences that, pursuant to Haw. Rev. Stat. §§ 706-659 and 706-660, the jury's verdict authorized in Jess's case.

   6. As a final matter, Jess takes this opportunity to update this Court on the status of the proceedings in the state circuit court. At a hearing on the State's "second" extended-term motion, the state circuit court granted Emlyn Higa's motion to withdraw as counsel for Jess and continued the matter until October 5, 2006, for new counsel to be appointed.

   Notably, Deputy Prosecuting Attorney Christopher Van Marter -- who fails to personally subscribe to the State's memorandum in opposition, preferring, perhaps, a two-DPA thick buffer between himself and this Court -- made an entirely groundless objection to Mr. Higa's meritorious motion. Jess has lodged ineffective assistance of counsel claims against Mr. Higa and, as such, it is beyond cavil that Mr. Higa should not continue representing Jess. Jess, acting *pro se*, filed papers *in May* seeking Mr. Higa's removal from his case. Yet, the basis for DPA Van Marter's objection appeared to consist of nothing more than that he, personally, was not aware of Jess's or Mr. Higa's requests for the latter's withdrawal from the case.

   In any event, all that can be expected to occur at the October 5th hearing is that the state circuit court might rule on DPA Van Marter's request to empanel a jury, with the matter likely continued yet again for a sentencing proceeding in front

of a jury. Mid-October will mark six months since this Court issued its order granting Jess's petition. Delaying compliance with this Court's order even further is, at this point, unwarranted. It is especially unwarranted when all that can lawfully be done to comply with this Court's order -- i.e., entry of an amended judgment imposing ordinary-term sentences -- is largely, if not wholly, a merely ministerial task that should take but a few weeks, *at most*, to complete.

## <u>CONCLUSION</u>

Petitioner BRIAN JESS respectfully requests that this Honorable Court grant his motion for an order regarding execution of this Court's judgment granting Petitioner's § 2254 Habeas Petition. Accordingly, this Court should order the State to file a *lawfully* obtained amended state court judgment authorizing -- by reflecting the imposition of the ordinary terms of imprisonment prescribed by Haw. Rev. Stat. § 706-659 and 706-660 -- its continued custody of petitioner. The order should require the State to file the amended judgment in this Court within a reasonable period of time, as determined by this Court, but which petitioner proposes be no greater than fifteen days from the issuance of the order. Moreover, the order should reflect that any failure to comply with the order will result in the immediate release of petitioner, subject to any reasonable conditions this Court sees fit to impose. Nor does Jess perceive any reason that would preclude this Court, should the State's defiance of this Court's order persist, from imposing appropriate sanctions on the State or any of the attorneys representing it.

DATED:  Honolulu, Hawaii, September 5, 2006.

PETER C. WOLFF, JR.
Attorney for Petitioner
BRIAN JESS

15

## CERTIFICATE OF SERVICE

I, PETER C. WOLFF, JR., hereby certify that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses on September 5, 2006:

Served by First Class Mail:

MARK J. BENNETT, Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii  96813
      Attorney for Respondents

IWALANI WHITE, Interim Dir.    LANE BLAIR
Department of Public Safety    Diamondback Correctional Facility
919 Ala Moana Boulevard    Route 2, Box 336
Honolulu, Hawaii  96814    Watonga, Oklahoma  73772
      Respondent      Respondent

and

PETER B. CARLISLE
Prosecuting Attorney
CHRISTOPHER VAN MARTER
DANIEL H. SHIMIZU
MARK YUEN
Deputy Prosecuting Attorneys
Office of the Prosecuting Attorney
1060 Richards Street, 9th & 10th Floors
Honolulu, Hawaii  96813

DATED:  Honolulu, Hawaii, September 5, 2006.

PETER C. WOLFF, JR.
Attorney for Petitioner
BRIAN JESS