IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN JESS, ) | CIV. NO. 04-00601 JMS/BMK |
| ) | |
| Petitioner, ) | MEMORANDUM IN SUPPORT |
| ) | |
| vs. ) | |
| ) | |
| JOHN F. PEYTON, Director, ) | |
| Department of Public Safety, State of ) | |
| Hawaii; LANE BLAIR, Warden, ) | |
| Diamondback Correctional Facility, ) | |
| ) | |
| Respondent. ) | |
| ) | |

## MEMORANDUM IN SUPPORT

On September 14, 2006, petitioner's counsel received the State's proposed order. A copy of the State's proposed order is attached as Exhibit A. Because the problems with the State's proposed order are too extensive to repair, petitioner adopted the expedient of simply drafting and proposing his own order.

In his proposed order, petitioner attempted either to use this Court's own words -- drawn from the Court's remarks and rulings at the hearing conducted on petitioner's motion -- or close paraphrases of this Court's remarks when context required slight rephrasing. In what follows, petitioner identifies the remarks and rulings that this Court made at the hearing on the motion that he relies upon for the crucial portions of his proposed order.

1. The first sentence of the third paragraph of the order reads: "Pursuant to Stein v. Wood, 127 F.3d 1187 (9th Cir. 1997), this Court retains jurisdiction to rule on petitioner's motion notwithstanding that the State has appealed this Court's order granting Jess's petition to the Ninth Circuit." Proposed Order at 3.

This Court commenced the hearing on petitioner's motion by ruling that it had jurisdiction to entertain the motion:

> THE COURT: …. Let me say as a preliminary matter, on the issue of jurisdiction, I've read the Stein case. I don't think there's any real dispute that I could see [that] could possibly be made that I don't have the ability to be engaged at this stage. …. I think it's pretty clear I have jurisdiction. …. I'm quite convinced [that] the Ninth Circuit has made it clear that I have concurrent jurisdiction … when an appeal is pending.

Transcript of Proceedings 09/07/06 ("Tr.") at 2-3 (typography emended).

2. The second and third sentences of the fourth paragraph of the order read:

> In ruling that petitioner's extended-term sentences were unconstitutional, this Court did not intend to broadly rule that the entire extended-term sentencing scheme is unconstitutional. Rather, this Court merely ruled, in accord with the Ninth Circuit's decision in Kaua, that when a judge finds that an extended term is necessary for the protection of the public and makes further findings supporting the public-protection finding, the resulting extended-term is unconstitutional.

Proposed Order at 3.

At the hearing on petitioner's motion, this Court remarked that in its order granting his petition, this Court "did not mean to suggest that the entire statute is unconstitutional in any way. I --what I meant to say is when a judge makes these findings, it's [un]constitutional." Tr. at 7. This Court also remarked: "[O]bviously I'm bound, as are the other judges here, by the Ninth Circuit; and the Ninth Circuit has spoken clearly on this." Tr. at 14.

    3.    The fifth paragraph of petitioner's proposed order reads:

> It is, moreover, for the state courts to decide, in the first instance, whether the statutes prescribing the extended term scheme, other state statutes, and the state and federal Constitutions lawfully permit a jury to be empaneled for the purpose of making the public-protection finding, its supporting findings, or any other findings of fact necessary to justify imposition of an extended-term sentence under the version of Hawaii's extended-term scheme that applies to petitioner. All this Court's order granting Jess's petition determined was that his extended-term sentences were imposed in violation of his federal constitutional right to trial by jury. In ordering the State to resentence Jess, this Court did not therefore intend to limit or otherwise indicate what particular sentence the state court could or should impose. That said, however, the state court may not resentence Jess in a lawless manner; the sentence it imposes must be lawful under state statutory, decisional, and constitutional law, and must be lawful under the United States Constitution.

Proposed Order at 3-4.

At the hearing, this Court remarked: "I did not intend in my order [granting Jess's petition] to suggest that the [S]tate is precluded from seeking an

3

extended term by requesting a State Court judge to impanel a jury." Tr. at 26. The State sought further clarification, asking this Court to specify that it did not intend to delimit the state court's *lawful* sentencing options, to which this Court agreed:

> MR. YUEN: Okay. And then the second thing is the state would ask that the order could include that this court did not intend to limit any lawful sentencing option.
>
> THE COURT: Yes.

Tr. at 28. And, finally, this Court concluded the hearing by emphasizing that it was not suggesting that empaneling a jury would be constitutionally lawful: "And I'm not saying Mr. Wolff is right or wrong on his view that going forward with a jury trial itself would be unconstitutional." Tr. at 29.

The fifth paragraph of petitioner's proposed order also reflects this Court's view that it is for the state courts to decide, in the first instance, the lawfulness of empaneling a jury for purposes of imposing an extended-term sentence on a persistent or multiple offender. In this regard, this Court made the following remarks at the hearing:

> THE COURT: …. As I understand what your asking me to do is essentially make a determination now … that resentencing using the extended-term statute but presenting the facts to a jury would be either inconsistent with my order or also inconsistent with the Sixth Amendment. And I'm no so sure I'm the person in the first instance to make that determination as opposed to letting that be addressed by the State Court judge and then the State Court judge would rule one way or another and then

4

> it would be appealed potentially one way or another …. [A]nd it would go to the Supreme Court; and then there would be a habeas petition from that in normal course that the Sixth Amendment was violated … [o]r the Fifth Amendment was violated. … And so, I just think that … the appropriate course is to let this matter run its course.

Tr. at 7-8 (typography emended).

This Court also recognized that the state court would be in "an uncomfortable position," because it could not make (as the Hawaii Supreme Court has held it may) the public-protection finding and its supporting findings. Tr. at 9-10. This Court thus acknowledged that, if the State indeed presented the state circuit court with the question of whether to empanel a jury to make those findings, "the judge will be confronted with issues of the constitutionality[,] or simply under the statutory framework under the state law[,] whether or not he or she can, in fact, impanel a jury or whether that can't be done." Tr. at 10. This Court accordingly reiterated: "[I]t seems to me … [that] the right way to do it is sort of let this go through the system in the normal course." Tr. at 10; see also id. at 23-24. This Court also remarked: "What I'm saying is that I believe that's [(the lawfulness of empaneling a jury)] appropriate for that to be worked out in the first instance in the State Court system and then back to the Federal Court if there's a challenge as to the constitutionality of that process, all right?" Tr. at 29.

5

4.      The seventh paragraph of petitioner's proposed order reflects this Court's ruling that the State provide notice to petitioner's counsel of how it intends to proceed in the re-sentencing proceedings. The State's proposed order completely fails to include this portion of this Court's ruling.

As it has in the state courts, the State wavered at the hearing on petitioner's motion when this Court pressed it to state what sentence it would seek in the re-sentencing proceedings. See Tr. at 17, 20. This Court thus ruled that it has "the power … to give a deadline by which [the State has] to make a firm decision … and then either go in and seek a particular sentence that's not extended or to cut bait as to the extended term." Tr. at 17-18. This Court then had a lengthy exchange with petitioner's counsel and the State regarding what deadline to impose and what it was a deadline for. This Court clarified that it was "not suggesting … a time limit on how the [state] [c]ourt acts." Tr. at 19. Rather, it was going to set "a time limit on which [the State has] to make up your mind as to how [the State] want[s] to proceed[.]" Tr. at 20. Hence, this Court thought that "some reasonable time limit is appropriate" to impose on the State within which it would need to decide upon what sentence it would seek in the state courts and how it would seek to have it imposed.

This Court emphasized that "the one point [petitioner] do[es] make that I think is appropriate is that there needs to be due diligence to move this forward and make a final decision without undue delay." Tr. at 23. Accordingly, this Court ruled:

6

> THE COURT: …. I believe it is appropriate for me to put some time limit … to make a final decision either to go and ask for an amended judgment without the extended term or to proceed on the extended term. Now, how long that takes, I can't control within the State Court system. …. And I would suggest within 30 day, Mr. Yuen, there should be a firm decision one way or another. And perhaps it's already been made. …. But I think that sort of limbo is not healthy. So, I do think we need to move forward.
>
> Now, what I would suggest, Mr. Yuen, is that you prepare a proposed order and share it with Mr. Wolff, see if you folks can agree on some language regarding the 30 days. And then I will enter a short order on this matter.

Tr. at 26-27.

This Court further directed that the State's proposed order should include a provision that the State provide notice to petitioner's counsel of how it was going to proceed in the state courts: "Well, let me do this. They have to give notice to you. …. Put that in the proposed order." Tr. at 27 (typography emended). And eventually, this Court opted to impose October 13, 2006, as the deadline for providing this notice:

> THE COURT: …. And within 30 days -- and we can pick a date. Why don't we say October -- let's say October 13th. And that will give a week or so after the initial hearing if the state changes its mind … after that hearing for any reason, but to give Mr. Wolff … notice as to how the … prosecutor's office is going to proceed.

Tr. at 28.

7

Petitioner files his proposed order and the foregoing memorandum in support in accord with this Court's Local Rule 58.2 and this Court's February 1, 2006, Amended General Order Adopting Electronic Case Filing Procedures.

DATED: Honolulu, Hawaii, September 14, 2006.

_____
PETER C. WOLFF, JR.
Attorney for Petitioner
BRIAN JESS